Parker J. C.
delivered the opinion of the Court. The question in this case is, in whom was the property of the ship at the time of attachment by the defendant. If in Edward and Henry Rogers, the attachment will prevail; if in the plaintiffs, the defendant was a trespasser and the action is maintained.
The plaintiffs claim title to the ship by virtue of the several conveyances and contracts between Glover on the one part and E. & H. Rogers on the other, bearing date November 10, 1825, and a written agreement made the same day between Glover and Lapham relative to the contract first mentioned ; also a contract between the two first named parties dated May 12, 1826, and another between the same parties made on the 20th of May.
The first instrument made on the 10th of November shaw's a contract for the building of a ship by the Rogerses for Glover. The former are to find all the carpenter’s materials and do all the carpenter’s work, to launch the ship and deliver her to Glover in the month of September following ; and he is to pay the stipulated price per ton in thirty days after such delivery.
The other instrument of the same date contains a lease of the yard in which the ship was intended to he built, and a covenant to convey the ship by bill of sale to Glover as soon as her keel should be laid, and before Glover should be required to make any payments on account of the ship.
It is obvious from these two instruments, that Glover was doubtful of the pecuniary circumstances of the Rogerses, and *219 that expecting to advance money from time to time, as the work on. the ship should proceed, though this was not provided for in the contract, it was the intention of both parties that he should have a lien on the ship for such advances.
The contract however was insufficient for this purpose, for by its legal effect the property in the ship would remain in the Rogerses until she should be delivered in Boston pursuant to its terms, and Glover had no security for the moneys he should advance, in the ship or the materials from which she was to be constructed.
Aware of this in all probability, an attempt was made to obtain the desired security by the instrument which bears date May 12th, but this perhaps was equally inoperative, notwithstanding Glover, as acknowledged in the instrument, had advanced a large sum of money on account of the ship ; for at that time it does not appear that the ship was begun to be built, or that the materials were then selected and separated from great quantities of ship timber then in the yard, much more than would be required for the building of the ship ; and there is no specification in the instrument, of the portions of timber which were to be appropriated as materials for this particular ship. Nothing more could pass by virtue of this instrument, than such sticks of timber or other materials as were then set apart and appropriated for the construction of the particular vessel which was the subject of their original contract.
But on the 20th of May there was something specific to convey, which was the subject of the instrument made on that day, and it is by virtue of this instrument, if at all, that the plaintiffs can support their title to the ship.
This instrument was intended to execute the covenant of the Rogerses in one of the instruments of the 10th of November preceding, viz. “ to make and execute to said Glover a good and sufficient conveyance and bill of sale of said vessel when the keel thereof shall be laid pursuant to the other instrument made on the same day ; ” and the question is, whether the purposes and intentions of the parties were lawful, and have been lawfully executed, so as to vest the ship then begun to be built, in Glover, so that its accruing form and value *220 should be his, and not liable to the claims of the creditors of t^le Uogerses after that time.
That the purpose was lawful cannot be questioned, for it. was to enable the artificer without funds to prosecute his labor with the funds of the merchant, and to give to the latter that security without which, according to all probability, the work would be stopped. Originally the contract might have been, that the merchant should find all the materials, and the artificer all the labor, in which case the property of the ship would be in the merchant; and under such a contract as the parties did enter into, there can be no doubt, that at any stage of the process it was competent to the parties to change their rela tian to each other, so that the merchant should become the owner, or should acquire a lien on the ship, or the materials from which she was to be composed, if done in good faith and in such form as will be recognised by the laws and rules of conveyancing.
The only grounds then which can be taken by creditors who see fit to attach, are to show that the means adopted to carry such intentions into effect are imperfect, or if perfect in form, that the transaction is fraudulent, being done with design to delay or defeat them of their just security under our attachment laws. Both these grounds have been taken on this occasion, and it is now to be decided with what success.
On the 20th of May, 1828, when the bill of sale was executed, the keel of the ship had been laid, and her stem and stern posts had been raised, and some frames had been got out and put together but not raised ; but most of the timbers were up, a few days afterwards, when Glover took symbolical possession under his bill of sale.
There was a good and valuable consideration for the transfer, for Glover had advanced 1000 dollars in the March preceding, and had continued to make advances. The Rogerses were under covenant to make the transfer, and they had a perfect right to do it, there being no attachment or other lien on the property. The conveyance is “of the keel and other parts of an unfinished vessel, now lying on the stocks in the ship-yard of said E. & H. Rogers in Medford, being the same vessel contracted to be built by the instrument aforesaid,” that *221 is, the contract of November 10th. Between the parties such a conveyance was perfectly valid, and from that time every stick of timber that went into the ship, and all that was prepared to be put in, became the property of Glover.[1] The rule of the civil law mentioned in the argument will exactly apply to such a case, proprietas totius navis carina causara sequitur. As if the builder of a house, the frame of which has been raised, should sell the unfinished house, and then proceed to cover and finish it, the house when built, as between those two, would belong to the purchaser of the frame, and more especially if there had been an antecedent sale of the materials with which the house was to be built.[2] And such sale may be absolute or conditional, according to the real bargain between the parties.
It is obvious from the recital in this instrument, that this sale was intended only for security to Glover for the money advanced, and to be advanced. This intention is clearly expressed, and therefore the continuing of the Rogerses to work on the vessel without any new agreement as to the terms, is no evidence of any covert bargain different from that which is expressed. They considered the original contract still in force ; the vessel was to be built, launched, delivered and paid for, according to the terms of it. But the property was changed, in order to give security, and this was innocent and proper.
Whether this instrument constituted a technical mortgage or not, it is immaterial to consider ; it partook of the nature of a mortgage so far as related to the Rogerses’ interest in the vessel beyond the advances of Glover, and of a conditional sale, so far as related to the obligation of Glover to pay for her according to the original contract. Glover had the right of possession until the time of payment came, and then, if he paid, he had the absolute property ; if he did not pay then, the deed was void, the property revested in the Rogerses. No-are the rights of creditors impaired by such transactions, fo ■ though they cannot by attachment take the vessel out of the *222 possession of such a vendee, they may, by virtue of the trustee process, secure in the hands of the vendee any balance which may be due to the vendor.
The instrument then is valid in itself; it is not per se fraudulent and void, and cannot be avoided but by the verdict of a jury, founded on the proof of a fraudulent intent towards creditors. This branch of the case has been settled by the proper forum, and therefore there is no occasion to consider the various facts reported which have a relation only to that question. The verdict on this point is not supposed to be against the evidence. The fact of not making a public declaration of a transaction of this kind has no tendency to prove fraud, and the evidence does not show any designed concealment.
With respect to the joining of Lapham in the action, we do not perceive any legal objection to it. Glover made all the contracts with the Rogerses ; as to them he is the sole owner. But Lapham on the same day that the first contract was made, agreed to be an owner with Glover and Freeman in the proportion of one fourth. Glover has a right to consider him so, and it was not necessary that there should be a conveyance from the Rogerses to him to constitute him owner, sufficiently for the purpose of maintaining an action. The ownership of the vessel until she is registered may remain altogether in verbal engagements. If two or three. agree to have a ship built, they will be presumed to be owners equally, unless some different proportion is agreed on. Lapham, by virtue of his contract with Glover, could claim and maintain his right to a quarter of the ship ; and if Glover, by virtue of his conveyance from the Rogerses, snould insist upon holding the whole, a court of equity would compel him to convey. And although it was intended that Freeman also should be an owner, his failure to become so has no other effect than to make Glover the owner of three fourths, leaving one fourth to Lapham, ac cording to his contract with Glover.

Judgment according to verdict

 See Sumner v. Hamlet, 12 Pick. 82,83; Johnson v. Hunt, 11 Wendell, 135,

 See 2 Kent’s Comm. (3d ed.) 361, 362.